**12**

## In re DEAN.

### DEAN v. CROCKER.
### No. 6015.

Circuit Court of Appeals, Ninth Circuit.
March 17, 1930.

Rehearing Denied April 23, 1930.

S. J. Bischoff, of Portland, Or., for appellant.

Barnett H. Goldstein and Sidney Teiser, both of Portland, Or., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal by a bankrupt from an order refusing a discharge in bankruptcy. The special master recommended a discharge but the District Court, after considering the evidence, denied the application. The trustee made two objections to the application for discharge. The first was based on a transfer of jewelry, worth about $1,400, to the bankrupt's wife on the eve of bankruptcy, and the other a transfer of a chattel mortgage upon which about $9,200 was due three days before the bankruptcy proceedings were inaugurated. The trustee claims that these transfers were made to defraud creditors and the District Court sustained that contention as to the chattel mortgage, but sustained the finding of the special master as to the jewelry.

The bankrupt appellant contends that both these transfers, even if inadvisable and legally indefensible, were, nevertheless, made in good faith and not in contemplation of bankruptcy. The appellant claims that the jewelry in question was given to his wife on the day of their wedding, but retained by him until the transfer of possession immediately before the bankruptcy proceedings were instituted. The bankrupt is a physician. He opened offices in Seattle, Portland, San Francisco, and Los Angeles. In order to protect himself against judgments for malpractice, which might be obtained, he admits that he incorporated four corporations. These corporations were all named "Chas. J. Dean M. D. Inc." The one organized in the state of Washington, however, added to its name "of Washington," the one in the state of California "of California," the one in Oregon "of Oregon," and the fourth corporation in Oregon simply "Chas. J. Dean M. D. Inc." The three corporations in which the name of the state was added were incorporated for $1,000. The stock in these corporations was issued to the bankrupt who transferred it to the Chas. J. Dean, M. D., Inc., in which the bankrupt owned all the stock and which he refers to as the parent corporation, and which he treated as his alter ego stating, "I was the Chas. J. Dean M. D. Inc." A fifth corporation was also organized by the bankrupt called the D. & D. Investment Company. The entire capital of this company was furnished by Dr. Dean, stock was issued in the name of his father, O. W. Dean, was returned to him having been indorsed in blank, and O. W. Dean also executed a general power of attorney to the bankrupt, a power which he retained during the transactions involved in this controversy. Dr. Dean was operating a hospital in Portland, all the personal property of which either belonged to him or to his alter ego, Chas. J. Dean, M. D., Inc. In October, 1925, this property was sold to Raymond P. Parshall and wife. Seven thousand dollars was paid on that purchase price and used by Dr. Dean, and the chattel mortgage in controversy was taken to secure the balance of the purchase price. It is contended by the bankrupt that at that time he gave this chattel mortgage to the D. & D. Investment Company, which he characterized as the alter ego of his father. The mortgage and the note which it secured as recorded were made out to and payable to Chas. J. Dean, M. D., Inc. Immediately before the institution of bankruptcy proceedings and in contemplation of the bankruptcy, this mortgage was assigned by the mortgagee and payee for which cor-

poration a petition in voluntary bankruptcy was filed at the same time as the petition of the bankrupt, Charles J. Dean. The question is as to whether or not this latter transfer was made in violation of the obligation of the bankrupt to his creditors.

In that connection the bankrupt and his father both testified that the mortgage, immediately upon its execution, and before recordation, was handed by the bankrupt to the father as vice president of the D. & D. Investment Company by way of a gift to the corporation, which was regarded by both as the alter ego of the father. The mortgage, as already stated when recorded and as shown by the record in the recorder's office, was made out in favor of Chas. J. Dean, M. D., Inc. The original mortgage and note were produced in evidence and show that the name of the mortgagee and of the payee was originally the D. & D. Investment Company. This has been erased in the promissory note and in the mortgage and in the copy of the promissory note contained in the mortgage, and the name of Chas. J. Dean, M. D., Inc., inserted, and in each instance the initials "R. P. P." were written, indicating the approval of the alteration by the mortgagor, Raymond P. Parshall.

The chattel mortgage was carried on the books of the Chas. J. Dean, M. D., Inc., and the $200 paid monthly thereon was received by that company, as shown on its books, until the first of January, 1927, a year and a month before the initiation of bankruptcy proceedings, at which time it was transferred to the books of the D. & D. Investment Company. In the income tax returns to the United States government the mortgage is shown as belonging to Chas. J. Dean, M. D., Inc., and in an application filed with the corporation commissioner of the state of Oregon, verified by the oath of the bankrupt and his father, the mortgage was shown as an asset of the corporation which was seeking permission to sell stock to the public.

To sustain the contention of the appellant that the title of this mortgage was transferred to his father's corporation and afterwards was altered, we must believe that the alteration was unauthorized by the D. & D. Investment Company and thereafter a forgery made with the intent of depriving the D. & D. Investment Company, or the father, of the gift that had been made only two or three days before, or that the alteration was authorized, and, whatever the effect of the original transaction, that the property was thereby vested in the bankrupt and remained in him until the transfer made immediately before and in contemplation of the bankruptcy. The evidence of the bankrupt as to this change in the mortgage is extremely vague and unsatisfactory, as we may indicate by one or two quotations.

"Q. That mortgage was made out to the Chas. J. Dean M. D. Inc.? A. It was made out to the D. & D. Investment Company and for some reason that I don't understand and never will understand it was changed. You can see it was originally made out to the D. & D. Investment Company and changed. The memorandum of agreement when the earnest money was paid proves that."

Again, when asked to state the circumstances under which the change was made, he replied: "A. I do not know why it was made. I have tried to think many times what prompted that change and as near as I can recall Jackson came in to me one day and called my attention to the fact that these were not made out properly and I simply paid no attention to it and it was changed. * * * I paid absolutely no attention to them, and I imagine that was the way this change was made without my paying any attention to what was being done. Jackson was our bookkeeper and office manager. He handled all our correspondence and handled all the details of the business. That is my recollection that he was the one who brought it in and changed it or suggested it was wrong and should be changed."

On cross-examination he stated that when Jackson brought the papers to him and called his attention to the fact that the mortgage was made out wrong, he said: "I certainly wanted them made out right and I paid no attention to the matter. It was changed and I initialed it. It was, I think, the next day. It was after it was signed."

Immediately before the bankrupt filed his petition for bankruptcy a judgment was obtained against him and the bankrupt corporation for malpractice in the sum of about $8,000. During the progress of the trial the bankrupt's attorney, in the presence of the bankrupt, informed the attorney for the plaintiffs in that suit that he would not pay the judgment, and that he would go into bankruptcy. It was after this statement that he made the transfers herein complained about.

Without further statement of the evidence or quotation therefrom, it is clear that the conclusion of the trial court was fully justified.

Order affirmed.

RUDKIN, Circuit Judge, sat in the hearing of this case, but does not participate in the decision.