83 F.2d 190 (1936)
In re BYRD COAL CO.
McCABE
v.
GLADSTONE.
SAME
v.
MEYERSON.
No. 310.
Circuit Court of Appeals, Second Circuit.
April 6, 1936.
Herman G. Robbins, of Brooklyn, N. Y. (William Shapiro, of New York City, on the brief), for trustee.
David Haar, of New York City, for respondents.
Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.
L. HAND, Circuit Judge.
These are appeals from orders disposing of a petition by a trustee in bankruptcy to secure the possession of three loose leaf books with black covers, alleged to be the property of the bankrupt, and relevant in tracing its assets. The respondent Gladstone was the sole shareholder of the company, its president, and in entire control *191 of it; Meyerson was his accountant; the business was selling coal. These "black books," as they were called, contained an account of gratuities or bribes paid by the bankrupt to agents  stationary engineers and the like  of its customers; since the transactions were considered discreditable, they were not entered in the ordinary books, where they appeared, lumped together, only as salesmen's expenses. As the books contained a list of all the bankrupt's customers and of the tonnage bought, because the bribe was calculated at so much a ton, they might be valuable as customers' lists, but in this aspect both the respondents minimize their importance, saying that they knew by heart all their customers. The books were certainly in the bankrupt's office as late as April eleventh, the day before petition filed; they were ordinarily kept in the desk of Gladstone, or in a safe or steel cabinet in the same room. The referee after hearing the proof at length, concluded that Meyerson, the accountant, had abstracted them on the morning of the twelfth, before the receiver appeared, and caused them to be taken to the office of the Gauley Coal Company, another coal dealer, operated by Gladstone's brother. He also found that Gladstone had directed Meyerson to take them and held him as having them in his control. On the first appeal to the District Court these orders were reversed, because the judge thought the findings not explicit enough, but upon a new hearing without further testimony the referee made express findings of possession or control, and entered a new order. On appeal from this the judge affirmed the order as to Meyerson, on the ground that the credibility of witnesses was not for him; but reversed it as to Gladstone, because he was not shown to have been in possession or control. The defeated party then appealed to this court in each case.
The trustee showed that on the evening of the eleventh Meyerson went to the office of another company just across the hall, then in charge of an aged watchman, apparently a disinterested witness, whom he asked if he might leave a package of books there over night; he did leave them there and took them back to the office of the bankrupt early next morning. Craig, an employee of the bankrupt, somewhat hostile to Gladstone but not otherwise discredited, testified that he came in on the morning of the twelfth and found Meyerson packing up some papers, among which he did not however identify the books; and that Meyerson told him that he was taking these away on Gladstone's orders. Gladstone was then eating breakfast at a nearby restaurant, where Craig went and berated him for taking away any papers at such a time, but got no definite answer. He went back and saw a bundle of papers in a car, driven by one, Turpin, a truck driver who had worked for Gladstone theretofore. The trustee's only other witness to the abstraction was Rosen, also an employee, who said that the evening of the eleventh he had visited Gladstone at his home, who told him to be in the office early the next morning to help Meyerson take away some books and papers. He did as instructed and saw Meyerson take out a bundle "with the books" and give them to Turpin who put them into the car. On the following Monday he saw Meyerson at the Gauley Coal Company's office, who told him that he was going out on the road and that he did not need a list of the bankrupt's customers which Rosen offered him, because he could get them from the "black books." Rosen had been once convicted for cheating, though his conviction was reversed; he was contradicted by Sillitto, an employee of the Gauley Coal Company and former employee of the bankrupt, who said that on the morning of the twelfth he had seen Rosen in Coney Island. His presence at the bankrupt's office that morning was also denied by the bankrupt's stenographer and by Turpin. The respondents admitted that the books had been in the office, but denied any share in their disappearance; they contradicted Rosen's testimony as to his talks with them and that he was there that morning at all. Gladstone's lawyer, Mandelbaum, had been at the restaurant when Craig appeared; he bore out Gladstone that Craig's anger had been only at not being told earlier of the bankruptcy, and that he had not complained about taking away the papers. Turpin agreed that he had taken a package from the office of the bankrupt to the Gauley Company on the morning of the twelfth, which he received from Meyerson, but Meyerson had told him that it was only his baby's picture; and he declared that the parcel contained no books, though it is hard to see how he could tell with any certainty. This was the substance of the evidence.
A trustee's petition to compel the bankrupt to surrender property alleged to *192 be in his possession is a "proceeding" under section 24b of the Bankruptcy Act, 11 U.S. C.A. § 47b, and not a "controversy." Section 24a, 11 U.S.C.A. § 47 (a). In re Shidlovsky, 224 F. 450 (C.C.A.2); In re Weinstock, 56 F.(2d) 829 (C.C.A.2); Kirsner v. Taliaferro, 202 F. 51 (C.C.A.4). When the bankrupt is a corporation a summary proceeding against its president or any other person holding its property is proper, if he makes no claim to it himself, and merely asserts that he does not have it. Cooper v. Dasher, 290 U.S. 106, 54 S.Ct. 6, 78 L.Ed. 203. Such a proceeding is as much a part of the administration of the estate as though directed against the bankrupt; and while the cases are not wholly in accord, it seems to us clear in principle that there can be no "controversy" where the dispute is only whether the respondent actually has the property. Hence it follows not only that the appeals had to be allowed by us, as they were, but that our jurisdiction extends only to points of law. The judge in saying that he should not review the credibility of the witnesses, relied upon decisions such as In re Slocum, 22 F.(2d) 282 (C.C.A.2); In re Gordon v. Gelberg, 69 F.(2d) 81, 83 (C.C.A.2); and Rasmussen v. Gresly, 77 F.(2d) 252, 254 (C.C.A.8). These do indeed circumscribe his review, but they do not hold that he had no power whatever to upset the findings, and probably the judge did not mean to go so far. In re M. & M. Mfg. Co., Inc., 71 F. (2d) 140, 142 (C.C.A.2); In re House of Fashion, 77 F.(2d) 279 (C.C.A.2). Perhaps it is a mistake logically to refine the scope of the review; General Order 47 (11 U.S.C.A. following section 53) states the extent of it accurately enough, and though it refers to "reports" of referees, it undoubtedly was meant to cover not only their reports as special masters, but their orders as "courts of bankruptcy." All their findings are "presumptively correct" and should stand unless the judge "is fully satisfied that error has been committed," but they are reviewable though the review involves discrediting witnesses. The General Order was not intended to change the law, but merely to codify it as it stood. Possibly it would have been plainer, therefore, had the judge contented himself with saying that on the whole record he was not "fully satisfied" of the referee's supposed errors; and if he meant that he must always believe those whom the referee believed, no matter how plainly he was wrong, he was mistaken. That mistake, if he made it, was not however vital, because from the record as a whole he ought not to have been "fully satisfied that error had been committed." There was the strongest possible ground for thinking that the two respondents had joined in suppressing the books. They continued in Gladstone's possession to the very eve of the bankruptcy and then they disappeared. This alone charged him unless he satisfactorily explained their disappearance. In re M. & M. Mfg. Co., Inc., supra, 71 F.(2d) 140. Nobody else had any reason to make away with them unless Rosen wanted them as a list of customers, which is not suggested. They would presumably have thrown light upon the entries in the books for salesmen's expenses; and while it is only fair to say that these may not have come to a large sum, they might have been important in other ways not now apparent; indeed their very disappearance imputes to them a consequence greater than it might otherwise have been reasonable to assume. This hypothesis of the respondents' guilt is confirmed by the oral testimony. There was no possible reason to discredit the watchman; or for that matter, Craig. Both were indeed contradicted, but it is precisely to resolve such contradictions that the referee sits; all that the District Court may do is to see that he does not abuse his power. The disclaimers of the two respondents are of course not final; but the testimony in corroboration of them was not impressive. Rosen was impeached, but many a man has lost his liberty before a jury upon the word of one far less credible in print. Moreover, his testimony was not necessary to the result; that of Craig and the watchman read in the conceded setting was itself enough to support the finding; it would probably have satisfied us, for example, in the referee's place, had their appearance been assuring.
The judge was however wrong as to Gladstone; it is true that he thought control of the books without possession would charge him; so far he was certainly right. But, as we have said, they were shown to have been in Gladstone's control up to the very eve of bankruptcy; and Craig said, even if we disregard Rosen, that Meyerson had told him he was abstracting papers for Gladstone and if that be believed it is almost certain that the books were among them. Turpin could not know what he took away. It is incredible that Meyerson *193 was spiriting away the books for himself, unless he wished to use them as customers' lists, which the respondents repudiate; Gladstone could scarcely fail to be the prime mover. No doubt in such cases if the respondent does not succeed in persuading the referee of the truth of his denial, he stands in peril of being imprisoned unjustly, but that is a risk which is inseparable with any judicial system. What decisions should be final is perhaps debatable, and there must always be some review; but in cases like these the review goes no further than to inquire whether there was evidence which might bring the referee to a settled and secure conviction.
Order affirmed as to Meyerson; order reversed as to Gladstone and order of the referee reinstated.