## In re SOTER.

District Court, S. D. New York.
May 5, 1937.

in writing concerning his financial condition. The case was sent to one of the referees for taking testimony. The referee took testimony and reported on April 3, 1937, that in his opinion the specifications had not been proved and the bankrupt should be granted discharge. In his report the referee directed that the matter be placed on the calendar of the District Court on April 7, 1937, for hearing on confirmation. The case was called on that day. No one objecting, the report was ordered confirmed as matter of routine. The trustee a few days later moved to open his default and for leave to be heard against confirmation of the referee's report. His affidavit shows that the default was inadvertent and excusable. Substantial justice requires that the trustee's default be opened and the case considered on the merits.

First, as to the loss of assets. The bankrupt ran a retail grocery store. He is now working for his brother who conducts a grocery in the same premises. At bankruptcy he had $9,800 in liabilities, of which $9,000 was owing to merchandise creditors, against only $750 in merchandise. He also had petty accounts receivable owed by customers in the amount of $800. The merchandise debts, $9,000, were for goods purchased within six months of bankruptcy. These facts cast upon the bankrupt the burden of explaining satisfactorily what had become of his assets. It is ground for denying discharge that the bankrupt has failed to explain satisfactorily the deficiency of assets to meet his liabilities, and the burden of a satisfactory explanation is placed on the bankrupt. Bankruptcy Act, § 14b (as amended, 11 U.S.C.A. § 32 (b). Yet an explanation was scarcely attempted. We have it from the bankrupt that he sold the goods in regular course to customers over the counter, that he sold at a profit of about 15 per cent., that he used the proceeds of sales to pay rent, clerk hire, and bills for goods purchased. He kept no books beyond a checkbook and a cashbook. Despite the referee's satisfaction with the bankrupt's testimony, I find it inadequate. His testimony leaves a heavy shortage altogether unaccounted for. As an explanation for part of the loss the referee found that a large part of the moneys realized from sales of merchandise in the last six months went to pay old notes. This finding rests on nothing substantial in the way of evi-

Ernest M. Acanfora, of New York City, for trustee.

Herman W. Feder, of New York City, for bankrupt.

PATTERSON, District Judge.

The bankrupt applied for discharge. The trustee in bankruptcy entered opposition, stating as specifications that the bankrupt had failed to explain satisfactorily the deficiency of assets to meet his liabilities and further that the bankrupt had obtained property on credit by making or causing to be made a materially false statement

dence and is no more than an assumption. The record shows neither the amount of the notes nor the amount paid on them, as the referee himself states in his report. In fact, there is nothing to indicate that any of the moneys taken in by the bankrupt in the last six months went to pay notes issued the previous year. As another partial explanation the referee found that on selling some goods the bankrupt was compelled to take a loss. The bankrupt's testimony at first was that he made no sales at a loss. He later said that where goods dropped in price he did sell at a loss, but when he was asked to name any kind of merchandise that dropped in price during the six months' period he was unable to do so. The explanation on this score was not satisfactory. The referee also commented on the trustee's failure to prove that the bankrupt had concealed assets. But the burden was not on the trustee to explain what had become of the bankrupt's assets; that burden was on the bankrupt.

The bankrupt's explanation of his deficiency in assets consisted at best of a few generalities. When the Bankruptcy Act was amended in 1926 so as to preclude discharge in cases where a bankrupt "has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities," Congress meant to require more than sketchy generalities. In re Sperling, 72 F.(2d) 259 (C.C.A.2); In re Libowitz, 53 F.(2d) 132 (D.C.N.Y.). The case is like the Sperling Case on the facts. The bankrupt did not explain satisfactorily the deficiency of assets to meet liabilities, and the trustee's specification on this head is sustained.

Second, as to the false financial statement. On August 9, 1935, an agent of Dun & Bradstreet called on the bankrupt. The bankrupt signed a statement showing the following estimated financial condition: Cash in bank $2,000, merchandise $10,000, total assets $15,700, liabilities $3,000, or a net worth of $12,700. Dun & Bradstreet sent a copy of the statement to Cudahy Packing Company, a subscriber to the credit service, in response to a request for it, and on the faith of the statement that concern gave the bankrupt a line of credit of $150 or kept open a pre-existing line of credit of $150. The credit was availed of by the bankrupt in buying goods down to his bankruptcy. The financial statement was hopelessly false. The bankrupt admitted in the bankruptcy proceeding that he had been insolvent for two years before bankruptcy.

The only dispute in the evidence is in respect to the circumstances under which the bankrupt signed the financial statement. De Baun, the Dun & Bradstreet agent, testified that in obtaining it he followed his regular routine. He asked the bankrupt if there had been any change from the last report, and on the bankrupt saying that there had been no change, he filled out the form from the figures in a report given by the bankrupt four months earlier and had the bankrupt sign it. The bankrupt gave a different version. According to him, De Baun started reading figures; the bankrupt said that he did not know what assets he had; De Baun said that it made no difference, that it was only a matter of record; the bankrupt then told De Baun that the figures in the statement were not true and protested against signing it; De Baun again said that the statement was only a record and insisted that the bankrupt sign, which he did. De Baun, recalled, gave the same version as before, that he showed the bankrupt the figures in the earlier statement and asked if there was any change, that the bankrupt looked it over and said there was no change. He contradicted the bankrupt's version of the affair. The referee found that the bankrupt's testimony was true and De Baun's untrue.

The referee's report carries weight, especially on questions of credibility, and will be adopted unless the court is fully satisfied that error has been committed. General Order 47, 11 U.S.C.A. following section 53; In re Byrd Coal Co., 83 F.(2d) 190 (C.C.A.2). But this does not mean that the court must always believe those whom the referee believed. In re Byrd Coal Co., supra, 83 F.(2d) 190, at page 192. If the statements of a bankrupt seeking discharge are contradicted so plainly by surrounding circumstances that they cannot rationally be said to represent the truth, they cannot be credited, and the fact that the referee believed them does not relieve the District Judge of his responsibility of determining the truth. Levy v. Industrial Finance Corporation, 16 F.(2d) 769 (C.C.A.4), affirmed 276 U.S. 281, 48 S.Ct. 298, 72 L.Ed. 572; In re Michel, 56 F.(2d) 15 (C.C.A.2).

The bankrupt had been in the grocery business fifteen years. He could read and

write English. He knew who Dun & Bradstreet was. He had given a financial statement four months earlier, a statement that was also false. The bankrupt's signature to the financial statement was in itself a circumstance not to be disposed of lightly. His explanation that he signed it only as "a matter of record," that he protested all the time that the figures in it were untrue, is too fanciful, too strongly opposed to what we know of human behavior. The bankrupt is squarely contradicted by De Baun, a witness who was conceded by the bankrupt's attorney to be disinterested and who had no possible motive to trick the bankrupt into signing a false statement and to deceive his employer's subscribers. There is no substantial reason to doubt De Baun's testimony concerning the signing of the financial statement. I am fully satisfied that the referee erred in accepting the fantastic story told by the bankrupt. The specification relative to the false financial statement was proved in every particular.

The specification on failure to give satisfactory explanation of loss of assets and the specification on false financial statement are borne out by the evidence. Discharge will be denied.