WILLIS H. SIMPSON, JUNIOR, *vs.* HENRY N. CLARK CO. & another.

Suffolk.    November 8, 1943. — April 29, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & RONAN, JJ.

*Frauds, Statute of. Trust,* Express trust: creation, oral trust; *Interest. Interest.*

Under the law of New Hampshire, an oral agreement by a grantee of real estate to sell it and from the proceeds to reimburse himself in certain amounts and to pay any balance to the grantor created at the time of the conveyance a trust which, although unenforceable because of R. L. of N. H. c. 259, § 16, while the grantee held the real estate, became enforceable with respect to proceeds received when the grantee sold the property and also with respect to money received by him under a fire insurance policy after a loss by fire in a building thereon.

Interest on the amount of a debt was improperly allowed in the absence of any agreement between the parties that it should bear interest or fixing a due date of the debt, or of any demand for its payment.

A trustee holding real estate would be entitled to interest on advances made by him personally to make necessary payments respecting the real estate at times when the funds of the trust were insufficient therefor.

A cestui que trust entitled to receive trust funds from the trustee would also be entitled to interest thereon if the trustee unreasonably delayed payment of the funds.

BILL IN EQUITY, filed in the Superior Court on July 21, 1942.

After a hearing by *Cabot*, J., a final decree dismissing the bill was entered, and the plaintiff appealed.

*Lee M. Friedman & C. W. Spencer*, for the plaintiff.

*J. W. Bartlett*, for the defendants.

QUA, J.  This is a bill in equity to establish a trust in favor of the plaintiff in real estate in New Hampshire which in September, 1929, was conveyed by Mrs. Simpson, the plaintiff's mother, to the defendant Henry N. Clark Co., a Massachusetts corporation, hereinafter called the defendant, and in the proceeds of this real estate, all of which was subsequently sold in parcels by the defendant, and for an accounting.  The judge made findings of material facts, and the evidence is reported.

At the time of the conveyance Mrs. Simpson was carrying on in Manchester, New Hampshire, with the assistance of her husband, a business known as "Simpson's Furniture Exchange."  She owed the defendant a note for the unpaid balance of an old business account.  The defendant had also several years before supplied the sum of $3,000 to enable Mrs. Simpson to reacquire business assets which she had assigned for the benefit of her creditors.  In 1929 she was again in financial difficulty, and a mortgage upon the real estate in question, upon which was her residence, was about to be foreclosed.  The defendant, evidently being willing to assist Mrs. Simpson but also desirous of securing itself, accepted from her a warranty deed which contained no mention of any trust, but in which the defendant assumed and agreed to pay three mortgages then on the property.  The judge finds that Mrs. Simpson desired and expected that the defendant would help her out financially from time to time and her husband after her death; that the property would be sold; and that if anything should be left after the defendant had made itself whole the balance should be paid to her or to the plaintiff.  He further finds that the conveyance was made and accepted upon an oral understanding between Mrs. Simpson and the defendant "that the defendant was to deal with the proceeds of the property if and when it was sold as follows: — (1) To reimburse itself for the balance of the old account represented by Mrs. Simpson's note above referred to;  the $3,000 which it had paid for the assets of the business;  all payments made by it in connection with the real estate such as taxes, repairs and payments of interest or principal on mortgages;  all payments

made to Mrs. Simpson, her husband, or for the benefit of the business; and interest at 6% on all these items including Mrs. Simpson's note which had originally been written without interest. (2) To pay the balance, if any, to Mrs. Simpson or if she were dead to her son, the plaintiff in this suit." Upon the conflicting testimony of witnesses at the hearing, we cannot say that these findings were plainly wrong (except in the matter of interest hereinafter discussed), although we think it was further understood and agreed that eventually the land would be sold.

We agree with the judge's further finding that there was no writing sufficient to satisfy the requirements of the statute of frauds, which is pleaded by the defendant. Letters which are relied upon as supplying a memorandum do not state fully and correctly the terms of the understanding. And although the defendant made some statements of a promissory character after receiving money for the land, we are of opinion that these do not amount to a new declaration of trust.

Both parties take the position that the existence of a trust either in the real estate or in the proceeds of its sale is governed by the law of New Hampshire, and the case seems to have been tried on that theory. We deal with it as the parties have chosen to present it, especially since we believe that the applicable law of New Hampshire is the same as our own.

The statute of frauds of New Hampshire dealing with oral trusts of real estate is now found in Revised Laws of New Hampshire, c. 259, § 16. It reads, as it did in 1929, as follows: "No trust concerning lands, excepting such as may arise or result by implication of law, shall be created or declared unless by an instrument signed by the party creating the same or by his attorney." The defendant argues that since neither Mrs. Simpson nor the defendant signed any instrument expressing a trust of any kind when Mrs. Simpson gave the deed of the land to the defendant, the statute prevented any trust being then "created" in the land, and that since the defendant therefore acquired the land free of trust, when the defendant subsequently converted the

land into money it also held the money free of trust.  Apparently the trial judge took this view.  We do not agree with it.

In the first place, statutes worded like that of New Hampshire have not been construed so literally as this argument requires.  They have been construed as if they read like the original English statute,[1] which required merely that "all declarations or creations of trusts or confidences of any lands . . . [should] be manifested and proved" and not strictly "created" by a writing.  This construction is given to our own statute, G. L. (Ter. Ed.) c. 203, § 1, the wording of which is practically the same as that of the New Hampshire statute.  *Urann* v. *Coates,* 109 Mass. 581, 585.  *Liberty Trust Co.* v. *Hayes,* 244 Mass. 251, 254–255.  *Ferguson* v. *Winchester Trust Co.* 267 Mass. 397, 400.  It has been adopted in other States having statutes similarly worded.  *Gaylord* v. *Lafayette,* 115 Ind. 423, 428.  Perry on Trusts & Trustees (7th ed.) §§ 80, 81.  Bogert on Trusts & Trustees, § 63, note 18, §§ 82, 83.  Scott on Trusts, §§ 40, 40.1.  Am. Law Inst. Restatement: Trusts, § 40, comment a.  There seems to be little or no authority to the contrary.  See, however, *McClellan* v. *McClellan,* 65 Maine, 500.  Upon this construction of the statute it would seem that the trust should be regarded as existing from the moment of the conveyance, and although unenforceable because of the lack of a writing while the property remained in the form of real estate, it would become enforceable as soon as the real estate was converted into money.  By so converting it the trustee has "withdrawn it from the shield of the statute."  *Bork* v. *Martin,* 132 N. Y. 280, 286.

Accordingly, a number of cases, described by Professor Scott as "the weight of authority" (Scott on Trusts, § 52.1, at page 286), hold that where a person takes title to land upon an oral trust which provides for a sale of the land and a holding of the proceeds of the sale in trust, the obligation to hold the proceeds in trust is separable from the obligation concerning the land, so that after a sale the trust may be

---

[1] 29 Car. II, c. 3, § 7.

enforced in respect to the proceeds without a writing. Bogert on Trusts & Trustees, § 66. See Scott on Trusts, § 52.1, at page 288; Am. Law Inst. Restatement: Trusts, § 26, comment 1. That is the doctrine of our own cases. *Chace v. Gardner,* 228 Mass. 533. *Fencer v. Wills,* 259 Mass. 546. No cases in New Hampshire squarely in point have been called to our attention, although the doctrine of separability may find some support in *Graves v. Graves,* 45 N. H. 323, *Mahagan v. Mead,* 63 N. H. 130, and *Pitman v. Hodge,* 67 N. H. 101. In the absence of any authoritative decision in New Hampshire we prefer to believe that the law of that State, like our own law, protects the cestui que trust in a case like this. The same principle extends to a sum of money received by the defendant from an insurance company as indemnity for a loss caused by fire in the dwelling house.

The findings of the judge as to the several items of the account must stand, except a credit to the defendant of $1,386.53 for interest, to which the plaintiff objects. Mrs. Simpson's note to the defendant for the old balance of the business account was written without interest. There was no evidence of any agreement that the $3,000 for the goods included in the assignment and restored to Mrs. Simpson or the items of charges for goods sold to Mrs. Simpson or her husband after the conveyance of the land should bear interest, or as to the due dates of these items, or as to any demands for their payment. See *Gay v. Rooke,* 151 Mass. 115, 116–117; *Bacon v. Bacon,* 266 Mass. 462, 474; *Sayles v. Commissioner of Corporations & Taxation,* 286 Mass. 102, 105; *Childs v. Krey,* 199 Mass. 352, 358; *Goldman v. Worcester,* 236 Mass. 319; *Bank of Brighton v. Smith,* 12 Allen, 243, 251–252; *McGrimley v. Hill,* 232 Mass. 462; *Cochrane v. Forbes,* 267 Mass. 417; *Ratner v. Hill,* 270 Mass. 249, 253; *Graustein v. H. P. Hood & Sons, Inc.* 293 Mass. 207, 222. Nor do we find any evidence that it was a part of the oral trust agreement between Mrs. Simpson and the defendant that interest should be paid, except a self-serving statement by the defendant in one of its letters long after the agreement was made. There was much in

the testimony of the defendant's own agent tending to show that interest was not mentioned at the time of the agreement. The defendant might be entitled to interest on any sums advanced by itself while it was trustee to meet necessary payments in relation to the real estate when it had insufficient money on hand belonging to the trust fund. *Jennison* v. *Hapgood,* 10 Pick. 77, 102. See *Mayhew* v. *Martha's Vineyard National Bank,* 203 Mass. 511, 514. On the other hand, the defendant would be liable to the plaintiff for simple interest if it unreasonably delayed the payment to him of the balance in its hands. *White* v. *Ditson,* 140 Mass. 351, 362. *Rowland* v. *Maddock,* 183 Mass. 360, 363. *Argus* v. *Kokkorou,* 308 Mass. 315, 320.

The result is that the final decree is reversed. A decree is to be entered, final as to the defendant Hunt, against whom nothing has been shown, with costs to him as against the plaintiff. As between the plaintiff and the defendant Henry N. Clark Co., all items in the account are to stand as fixed by the trial judge, except the item for interest. That item is struck out, and the cause is to be further heard on the question of interest. After such hearing a final decree is to be entered ordering the defendant Henry N. Clark Co. to pay to the plaintiff such sum as may be found due after including in the account proper charges and credits for interest, if any there are, with costs, including costs of this appeal.

*Ordered accordingly.*