122 A.2d 132 (1956)
Joaquim LAWRENCE
v.
Mary ANDREWS et al.
Eq. No. 2324.
Supreme Court of Rhode Island.
April 13 as of January 17, 1956.
*133 Edwin B. Tetlow, Providence, for complainant.
Arthur N. Votolato, Leo T. Connors, Providence, for respondents.
CONDON, Justice.
This is a bill in equity for an accounting. The cause was heard in the superior court on bill, answer and proof whereupon a decree was entered granting the relief prayed for. From that decree the respondents have appealed to this court.
The bill alleges that complainant Joaquim Lawrence, also known as Joaquim Lourenco, and his wife Maria Lawrence because of advanced age, the wife's illness, and their inability to care for their property, did, on October 24, 1949, convey to respondents Mary Andrews, their daughter, and Jules Andrews, her husband, a certain house and land in Oakland, California; that said respondents then "agreed to rent or lease said property, until such time as they could secure a purchaser for the same, and to account to said Joaquim Lawrence and Maria Lawrence for the rents collected for the use of said property, and the proceeds from the sale thereof"; that Maria died in November 1949; that subsequently respondents, after renting "said premises for a period of time," sold the same under an arrangement whereby the purchaser was to pay $75 monthly until the purchase price was paid in full; and that "on a number of occasions" complainant has requested respondents to account for said rents and proceeds, but they have refused to do so.
The respondents' answer expressly denies the making of such an agreement; the receipt by them of any sums of money as alleged; any request by complainant for an accounting; or any refusal by them to account. They admitted the allegation of the *134 death of Maria Lawrence in November 1949, but as to all other allegations of the bill they left complainant to his proof.
It appears from the evidence that complainant and his wife purchased the real estate in question for $9,000 on August 26, 1946 and took title thereto as joint tenants. Thereafter Maria Lawrence became sick with cancer and as her condition grew progressively worse she was unable to care for herself or the property. The complainant because of advanced years was also unable to give proper attention to the property.
In these circumstances respondent Mary Andrews who lived in or near Oakland called regularly at her mother's home to take care of her. Finally she and her husband and her two children moved to the Lawrence home. Thereafter in 1949 her mother became so sick that she was removed to a hospital where she underwent surgical treatment. Sometime later after she returned home it became evident to the mother and her husband that they could no longer care for their property and they conveyed it without consideration by deed dated October 24, 1949 to Mary Andrews and Jules Andrews. A few weeks thereafter Maria Lawrence died on November 19, 1949. After her death respondents continued to occupy the property for a brief period but finally they sold it and complainant returned to the East to live with his son Charles Lawrence in North Dartmouth, Massachusetts.
The complainant testified that when he and his wife Maria conveyed their property to respondents the latter agreed to rent or sell it and pay over to them the rents collected until it was sold and thereafter the proceeds of such sale. He further testified that they had not done so, but had "tricked" him. His testimony as to such agreement was corroborated in substance by the testimony of his son Charles concerning certain correspondence and conversations he had with respondents about the transfer of the property and the use that should be made of it to provide for the care and treatment of his mother and for the support of his father.
The respondents admitted that the property was conveyed to them without consideration. Nevertheless they denied that there was any agreement on their part to hold the property for the benefit of complainant and Maria and to pay over the proceeds of a sale thereof to them. Mary Andrews testified that the conveyance was an outright gift to respondents without any conditions. Each of them testified that prior to the instant suit complainant had never asked them to account to him. There was some other testimony that threw a little more light on the attitude of respondents in their relations with complainant and his wife concerning the unusual conveyance of their property, but in the main, after all the evidence is considered, it remained largely a question of the credibility of the complainant on the one hand and of respondents on the other.
On this evidence the trial justice found that the conveyance was not a gift; that it was made subject to the oral agreement alleged in the bill; and that respondents, when they accepted the conveyance, never intended to account in accordance with such agreement. He expressly stated that he made this last finding "because their [respondents'] whole attitude was to get as much out of the old people as possible and to get the public authorities to pay for the medical expenses and care of the old lady." He further stated that they "made very poor witnesses and created a very bad impression upon me." At the conclusion of the hearing he observed from the bench: "Well, I do feel that the attitude of the respondents all along the line discloses some consciousness of guilt." Apparently he fully credited complainant's testimony that the conveyance was subject to an oral agreement, since he ordered respondents to account "in accordance with the terms of the transfer."
In such a situation where the evidence was sharply conflicting and so much depended upon the credibility of the parties the findings of the trial justice are entitled to great weight on review in this court. Loughran v. Del Santo, 79 R.I. 150, 85 A. *135 2d 66; Rooke v. Grant, 77 R.I. 447, 76 A.2d 793. Unless his findings are clearly wrong or it appears to us that he has misconceived the evidence they will not be disturbed. After carefully reading the transcript and bearing in mind that the trial justice had the advantage of observing the parties on the witness stand and noting their demeanor as they testified, we cannot say that his findings are clearly wrong, or that he misconceived the evidence in any important particular.
However, conceding the facts to be as found, respondents nevertheless contend that the trial justice erred in allowing proof of the oral agreement. They contend that this was a violation of the statute of frauds, general laws 1938, chapter 481, § 1, which in part provides: "No action shall be brought * * * Third: Whereby to charge any trustee under any express trust * * * Unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized." This terminology follows more or less the original English statute of frauds.
The respondents argue further that if the transaction, since it involves California real estate and was entered into and consummated in that state, is to be governed by the law of California, then the bar of the statute is even stronger, since section 852 of the California code provides: "No trust in relation to real property is valid unless created or declared: 1. By a written instrument, subscribed by the trustee, or by his agent thereto authorized by writing; 2. By the instrument under which the trustee claims the estate affected; or, 3. By operation of law." (italics ours) Deering's Civil Code of California, § 852, p. 188; West's Ann.Cal.Civ.Code, § 852.
As to this latter contention, we are of the opinion that the difference in terminology of the two statutes is of no material importance. It appears to be generally understood that similar language in the statutes of frauds of some of the states of this country is to be construed like the original English statute of frauds. 1 Perry on Trusts and Trustees (7th ed.), §§ 80, 81; 1 Scott on Trusts, § 40. In a comparatively recent case the supreme court of Massachusetts so construed the New Hampshire statute which resembles the California code in its use of the words "created" or "declared." Simpson v. Henry N. Clark Co., 316 Mass. 118, 55 N.E.2d 10, 154 A.L.R. 380. Hence whether we view the transaction in the case at bar as governed by California law or Rhode Island law the result will be the same.
The real question here is whether the agreement accompanying the conveyance can be proved even though not in writing. It is acknowledged that a resulting trust could be so proved, but there is no claim made here of such a trust. The complainant's position is that proof of the oral agreement was proper on either of two grounds. First, he claims that parol evidence of the agreement was valid because it established a constructive trust; and secondly, because it tended to prove an express trust of personalty as far as the proceeds of the sale of the real estate is concerned. Such a trust he contends is not within the statute of frauds. We shall discuss each ground in that order.
We think that the decree may be supported on the first ground. A constructive trust arises by operation of law. It is based on fraud or deceit practiced upon the grantor by the grantee, not necessarily actual fraud but constructive fraud. For example, if one takes title to property and knows that his father who procured the conveyance believed he would hold it as a trustee and that but for such belief the conveyance would not have been made to him, and yet notwithstanding such knowledge he determined to hold the property as his own, then he acquired it as the result of a fraud practiced upon the real owners and is a trustee ex maleficio for them. Springer v. Springer, 144 Md. 465, 125 A. 162. In 1 Scott on Trusts, § 44.1, p. 251, the principle is stated thus: "If it can be shown that the transferee procured the conveyance by a *136 consciously false representation of fact, a constructive trust will be raised in favor of the transferor. Thus if it is proved that when the transferee promised to reconvey the property he did not intend to fulfill his promise, there is more than a mere promise subsequently broken, there is actual misrepresentation as to the fact of his present intention. If this is proved, a constructive trust will be raised in favor of the transferor." For a similar exposition of the principle see 3 Bogert on Trusts and Trustees, § 496, p. 211.
We are of the opinion that the express finding of the trial justice as to the intention of the respondents when they took the deed in the instant case discloses such constructive fraud and clearly renders respondents constructive trustees of the real estate for the benefit of the grantors. On that view their conduct is not the subsequent breach of a promise which they had previously entered into honestly and in good faith. If it were, no constructive trust could arise according to the precedents in this state and the great weight of authority elsewhere in this country. Broadway Building Co. v. Salafia, 47 R.I. 263, 132 A. 527, 45 A.L.R. 847; State Lumber Co. v. Cuddigan, 51 R.I. 69, 150 A. 760. 1 Scott on Trusts, § 44, p. 248.
In our opinion the decree cannot be supported on complainant's second ground. That ground proceeds on the theory that after the sale of real estate the agreement to pay over the proceeds of the sale does not relate to real estate or an interest therein but relates to personalty and therefore does not come within the statute of frauds. We agree that such proceeds are personalty and we recognize that in such a case it is generally held, as stated in Simpson v. Henry N. Clark Co., 316 Mass. 118, 121, 55 N.E.2d 10, 12, 154 A.L.R. 380, "that where a person takes title to land upon an oral trust which provides for a sale of the land and a holding of the proceeds of the sale in trust, the obligation to hold the proceeds in trust is separable from the obligation concerning the land, so that after a sale the trust may be enforced in respect to the proceeds without a writing. Bogert on Trusts & Trustees, § 66. See Scott on Trusts, § 52.1, at page 288; Am. Law Inst. Restatement: Trusts, § 26, comment 1."
However, the insuperable obstacle to the application of that principle to the case at bar is that our statute unlike those of many of our sister states bars oral proof of an express trust of personalty as well as a trust of realty. It does not refer only to trusts of land or any interest therein as many statutes of other jurisdictions do but to "any express trust" without qualification. However, if the transaction is governed by California law we would have no difficulty on this score in supporting the decree, since the California statute hereinbefore quoted expressly refers only to trusts "in relation to real property."
In any event, therefore, whether we view the transaction as governed by the law of this state or by the law of California the trial justice did not err in allowing proof of the oral agreement. The respondents either as constructive trustees under the law of this state or as trustees of an express trust of personalty under the law of California were properly held liable to account for the proceeds of the sale of this real estate.
There is one further question. It is contended that the trial justice erred in disposing of the interest of Maria Lawrence who was not a party to the bill and whose estate was not represented at any point in the proceedings. In our view there is no merit in this contention. While she was not a party there is no question but that the conveyance subject to the oral agreement was voluntarily made by her jointly with her husband and was for her benefit as well as his. Since the legal title to the property was in the complainant and his wife as joint tenants we think it should be assumed, in the absence of any claim to the contrary by her personal representative on behalf of her estate, that they intended to hold the beneficial title in like manner. The right of survivorship is applicable to *137 the substituted equitable estate as it was to the legal estate. Restatement, Law of Trusts, § 143 (2), Comment (a.). No statute or case in this state or in California to the contrary has been cited to us and as far as we are aware there is none.
The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.
CAPOTOSTO and BAKER, JJ., not participating.