Angelo **MINELLA**, Bankrupt, Appellant,

v.

**H. A. PHILLIPS**, Trustee in Bankruptcy, et al., Appellees.

No. 16576.

United States Court of Appeals
Fifth Circuit.

June 20, 1957.

Rehearing Denied July 27, 1957.

Seymour Lieberman, Aaron Goldfarb, Houston, Tex., for appellant.

Joel W. Cook, George B. Banks, Houston, Tex., Ross, Banks & May, Houston, Tex., of counsel, for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

Angelo Minella, the appellant, was in the plumbing supply business in Houston, Texas. He was adjudicated a bankrupt on August 23, 1955. He filed a petition for discharge which was opposed by the trustee in bankruptcy and by several creditors. During the eighteen months prior to bankruptcy, the appellant drew out of his business over $75,000. His books showed these withdrawals charged to him, but did not show what disposition he made of the funds withdrawn. During this period the appellant deposited in his bank account nearly $30,000 and claimed he had gambling losses of about $15,000. No explanation was made as to what became of the difference of $30,000, more or less. In the bankruptcy schedules which the appellant made and filed, a question was asked as to losses from fire, theft or gambling within the year prior to the filing of the petition. The appellant gave the question this answer, "Gambling, about $15,000 in various places in Galveston." At the first meeting of creditors the appellant testified that over a period of a year he gambled "sometimes twice a week, maybe once, maybe not for two or three weeks." He was asked the places where he gambled. At first he answered, "Well, I really don't know". On being reminded that he was under oath he explained and amplified: "Well, what I meant by that was this: I made it a practice not to know anybody or to ask the names of where I was. All I can tell you is a place in Richmond, a couple of places in Kemah and maybe a few places in Galveston, or something like that." He reiterated that he did not know the name of any of the places. Nobody went with him, as a general rule, when he gambled. Several months later he could remember or had since learned the approximate location of three or four places where he had gambled, the name of one of them and the name of the operator of another.

The appellant acquired a piece of property in Boston from his mother and stepfather. This property was sold in late March of 1955 for about $7,500. Early in the next month the appellant gave $5,000 of the sale proceeds to his son-in-law and two daughters. No entries with respect to the Boston property nor as to the proceeds of the sale of it were made on appellant's books. The appellant testified that his mother had told him that if the property was ever sold, she wanted the proceeds to go to his children and his son-in-law. This he thought, so he claimed, made him a trustee of the property for his children and son-in-law although the title was in his name prior to its being conveyed. The daughters and son-in-law of the appellant used that $5,000 to form and furnish capital to a corporation of the name of A. Minella Plumbing Supplies. Minella conveyed to the corporation the property in which he had conducted his business. This property was encumbered by a mortgage. For the appellant's equity in the property he received $10.00 in cash and an unsecured note for about $10,000 payable in monthly installments of $100. Appellant transferred the major part of his merchandise and fixtures to the corporation. Part of the merchandise was sold on consignment with payment to be made by the corporation as it made sales. The rest of the merchandise was sold on open account. A down payment of $10.00 was made by the corporation. It gave no security. The appellant agreed to rent from the corporation a part of the premises conveyed, for $400 per month which was to be deducted

from the payments to be made to the appellant.

The referee in bankruptcy determined that the appellant failed to explain satisfactorily the losses of assets, that the Boston property was not charged legally with any trust which would excuse the appellant from accounting for it to his creditors, that the sales of the real estate and improvements, and the fixtures and merchandise, were made for the purpose of hindering, delaying and defrauding his creditors, and that by reason of these matters and things the appellant should be denied a discharge in bankruptcy. The referee entered an order denying the appellant a discharge from his debts. The district court held that the referee's findings of fact were well supported by the evidence. The referee's findings of fact and conclusions of law were approved. A judgment of the district court was entered affirming and approving the referee's order. On appeal from that judgment, the matter is now before this Court. The appellant urges three propositions: first, that where a bankrupt has kept good business records which show personal withdrawals, a discharge should not be denied because the records do not itemize specifically who received the money; second, that if a bankrupt is not in the business of gambling he need not keep a record of gambling losses; and third, a discharge should not be denied when a debtor, prior to bankruptcy received moneys in trust which he did not believe belonged to him and therefore did not show the receipt or disbursement of such fund on his books. These propositions, which the appellant vigorously champions, are not, we think, those which were presented to and passed upon by the referee and the district court.

Section 4 of the Bankruptcy Act provides that the court shall grant the bankrupt a discharge unless satisfied that, among other things, he "has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities". 11 U.S.C.A. § 32 sub. c(7). The referee found, and the finding

is not challenged, that the bankrupt withdrew from his business over $75,000, returned about $30,000 to the business, claimed gambling losses of $15,000, leaving unexplained $30,000 of withdrawals. The bankrupt, by showing that the books of his business were complete and accurate, asserts that his discharge should not be denied because the records do not show what became of the money withdrawn. The bankrupt is not charged with having failed to keep books of account or record. 11 U.S.C.A. § 32, sub. c(2). He is charged with failure to explain what became of a substantial portion of the funds after the withdrawals and book entries were made. The bankrupt sought to explain disposition of $15,000 withdrawn by saying it was lost in gambling. Such an explanation may suffice if proved but is looked upon with disfavor. In re Pariseau, D.C.Mass.1936, 16 F.Supp. 893, 32 Am.Bankr.Rep.,N.S., 469. Minella's equivocal and uncorroborated testimony might well have been disbelieved. However, the referee made no finding, and needed to make none, with respect to the gambling losses. The admitted lack of any explanation of what became of $30,000, exclusive of the claimed gambling losses, forms a sufficient justification for the denial of a discharge. In re Brod, D.C.N.D.Ga.1909, 166 F. 1011, 21 Am.Bankr.Rep. 426, affirmed Brod v. J. K. Orr Shoe Co., 5 Cir., 1909, 173 F. 1019; In re Sperling, 2 Cir., 1934, 72 F.2d 259, 26 Am.Bankr.Rep., N.S., 223; In re Libowitz, D.C.S.D.N.Y. 1931, 53 F.2d 132, 18 Am.Bankr.Rep., N.S., 216; In re Soter, D.C.S.D.N.Y. 1937, 19 F.Supp. 764; In re Weiner, D.C. E.D.Pa.1942, 43 F.Supp. 1016, 51 Am. Bankr.Rep.,N.S., 707; 1 Collier on Bankruptcy, 14th Ed. 1401, Par. 14.59, et seq.; Remington on Bankruptcy, 6th Ed. 308, § 3171 et seq.

The referee held that the property in Boston and its proceeds were not charged with any valid trust which permitted the diversion of the amount received from the sale of such property from his creditors to his daughters and

son-in-law. Where land is conveyed under an oral agreement that it shall be sold and the proceeds held and disbursed to designated third persons, the courts are not in accord as to whether the third party may enforce such agreement. Massachusetts has adopted the rule that an oral agreement to hold land in trust, or its proceeds, when sold, in trust for another, while not enforceable by reason of the statute of frauds so long as the real estate is unsold, becomes enforceable when the land is converted into money. Chace v. Gardner, 228 Mass. 533, 117 N.E. 841; Simpson v. Henry N. Clark Co., 316 Mass. 118, 55 N.E.2d 10, 154 A.L.R. 380. Cf. McClelland v. Cowden, 5 Cir., 1949, 175 F.2d 601. If the referee intended to hold otherwise the ruling would, we think, be erroneous as the property was in Massachusetts. But we think the referee's holding is sound for another reason. All the evidence indicative of an intent to create a trust is the bankrupt's testimony that his mother told him "that if the property was ever sold she wanted it to go" to the bankrupt's children and son-in-law. Expressions of hope or desire do not manifest an intention to create a trust. Restatement, Trusts, § 25. It would not follow, however, that because there was no valid trust and the bankrupt was entitled in his own right to proceeds of the sale, the failure to make entries on his records as to the receipt and disbursements of the funds should result in the denial of a discharge. If the court deems the failure to keep the required records "to have been justified under all the circumstances of the case" such failure will not bar a discharge. The referee might have discredited the bankrupt's testimony about the desires of his mother, particularly in view of the facts that he retained for himself one-third of the sale proceeds which he believed, so he said, was received in trust for others. There was no finding with respect to this question. If the bankrupt in good faith believed, though erroneously, that he was acting as trustee and the sale proceeds belonged to others, it might well be that the failure to make the entries was justified under the circumstances. But this was not decided by the district court and, as other grounds require an affirmance, the question need not be here decided. Nor, since the sole question presented is the correctness of the order denying the bankrupt a discharge, do we need to consider whether a trust created by parol would be valid against creditors or against the trustee in bankruptcy. Cf. Tibbs v. Caterinacci, 4 Cir., 1951, 191 F.2d 957.

■ The bankrupt urges that the transfer of assets to the corporation was for a sufficient consideration, was intended to be and in fact was for the benefit of creditors and was not in any sense made with any intent to hinder, delay, or defraud creditors within the statute. 11 U.S.C.A. § 32, sub. c(4). The referee found otherwise and the district court approved and affirmed the finding. It is difficult to see how a creditor of the bankrupt could be helped by the putting of his assets into a corporation that had little other assets and which gave no security for payment. The finding that the transfer was such as to justify refusing the bankrupt a discharge was amply sustained by the evidence. See In re Dean, 9 Cir., 1930, 39 F.2d 12; George M. Mitchell Co. v. Lawton, 3 Cir., 1936, 82 F.2d 689; Green v. Toy, 1 Cir., 1949, 171 F.2d 979; 7 Remington on Bankruptcy, 6th Ed. 297, § 3159.

■ The referee in bankruptcy has reasonably broad discretion in granting or refusing a discharge to a bankrupt. When the referee's determination has been approved by the district court, it should not be disturbed on appeal except for the most cogent reasons. Hedges v. Bushnell, 10 Cir., 1939, 106 F.2d 979; In re Bendix, 7 Cir., 1942, 127 F.2d 759, certiorari denied Hillmer v. Bendix, 317 U.S. 668, 63 S.Ct. 73, 87 L.Ed. 537; Williamson v. Williams, 4 Cir., 1943, 137 F.2d 298; Gold v. John R. Blair Co., 2 Cir., 1944, 142 F.2d 209; Burchett v. Myers, 9 Cir., 1953, 202 F.2d 920; Kan-

sas Federal Credit Union v. Niemeier, 10 Cir., 1955, 227 F.2d 287.

We do not find error in the order of the referee or in the judgment of the district court. The judgment is

Affirmed.